IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JEFFREY BLEVINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ALLIANCE GROUP,<br><br>Defendant, | Case No.: 2:18-cv-364<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Jeffrey Blevins ("Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief as follows:

**NATURE OF THE ACTION**

1. In a misguided effort to market its business financing services, Capital Alliance Group (hereafter "CA" or "Defendant") established, or caused to be established through a third-party contractor, an automated calling operation to place unsolicited, prerecorded telemarketing calls to the cellular telephones of consumers nationwide.

2. Plaintiff brings this action for statutory damages and other legal and equitable remedies resulting from the illegal actions of CA in contacting Plaintiff and Class Members on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. § 64.1200 (hereinafter referred to as the "TCPA").

1

Defendant has violated the TCPA by contacting Plaintiff and Class members on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or by using "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A), without their prior express consent within the meaning of the TCPA.

3. CA also violated another provisions of the TCPA relating to "do not call" lists. CA violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by making more than one call to Plaintiff and Class Members who placed their telephone numbers on the National Do Not Call Registry ("NDNC").

4. On behalf of the classes, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized automated telephone calls, and an award of statutory damages to the members of the classes, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

5. This matter in controversy exceeds $5,000,000, as each member of the proposed Class of presumably thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Further, Plaintiff alleges national classes, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

6. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

7. This Court has personal jurisdiction over Defendant because a substantial part of the events concerning the unauthorized calls at issue occurred in this District, establishing

minimum contacts showing Defendant has purposefully availed itself of the resources and protection of the State of Ohio.

8. Venue is proper in the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because the majority of activities giving rise to the claims took place in the District because Plaintiff received phone calls in this District and Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

## PARTIES

9. Plaintiff Blevins is, and at all times relevant has been, a resident of the State of Ohio.

10. Defendant Capital Alliance Group is a nationwide provider of business financing services, primarily in the form of short-term loans. Capital Alliance Group is a limited liability company organized under the laws of the State of California, with a principal place of business in Santa Ana, California. Capital Alliance Group represents that it provides its services in the State of Ohio.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

**The TCPA's Restrictions on Calls to Cellular Telephones**

11. In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

12. The TCPA regulates, among other things, the use of automatic telephone dialing equipment, or "autodialers."

13. Specifically, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

14. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

16. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party.[3]

17. With regard to calls or texts made for telemarketing purposes, the Federal Communication Commission has instructed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are

---

[2] *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115 (¶ 165) (2003).

[3] *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Declaratory Ruling, 23 FCC Rcd 559, 564-65 (¶ 10) (2008) ("2008 FCC Declaratory Ruling").

>identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

18. In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made or a text is sent bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

19. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

20. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[4]

21. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is

---

[4] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Rcd 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

5

liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

22.     The FCC has repeatedly rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *Id.* at 6587 n. 107.

23.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

24.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information."  *Id.* at 6592-593 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  *Id.* at 6593 (¶ 46).

**The TCPA's Rules On Do Not Call Lists**

25. The TCPA and its regulations also make it unlawful to:

> initiate any telephone solicitation to . . . a residential telephone subscriber who has registered his or her telephone number on the national-do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

47 C.F.R. §§ 64.1200.

26. The TCPA and the Regulations mandate that all telemarketers institute certain minimum procedures and standards prior to placing any telemarketing call. If such mandatory minimum procedures are not instituted, then each telemarketing call constitutes a violation of the TCPA, 47 U.S.C. § 227(c)(5), and the Regulations, 47 C.F.R. § 64.1200(d). Where a violation has occurred, any person receiving two or more calls has a private right of action.

## FACTUAL ALLEGATIONS

27. Plaintiff Blevins is the owner and sole proprietor of Interior Creations, a small business that performs home remodeling and improvement projects.

28. Plaintiff Blevins is the exclusive user of the telephone assigned the number ending in 3503 and the account holder of record for that account. For several years, the number has been registered with the NDNC.

29. On numerous occasions, but most recently on April 7, 2018, Plaintiff Blevins received an unsolicited pre-recorded voice mail on his cellular telephone with the telephone number 216-810-1861 in his caller ID. The message was purportedly from "Rachel" offering him "up to $250,000" in credit toward his business.

30. In order to gain more information regarding the source of the call, Blevins returned the call and left a message with the answering service, seeking additional information. On April 9, 2018, he received an email from Eric Knecht, who identified himself as representing

7

Capital Alliance Group.

31. Prior to receiving the calls at issue, Plaintiff Blevins has never contacted CA for any purpose, and has no business relationship with CA.

32. Plaintiff Blevins received all calls as described above on his cellular telephone assigned a number ending in 3503.

33. Plaintiff Blevins understood the purpose of CA's calls was to market its services and solicit business from him.

34. Plaintiff Blevins did not consent to being called by CA for telemarketing purposes and the calls received from Defendant were an intrusion into Plaintiff's privacy and caused Plaintiff Blevins annoyance and an unnecessary expenditure of his time and efforts.

35. CA is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

36. CA is a nationwide provider of business funding services, in the forms of loans or other financial products.

37. CA, or some unnamed entity working on CA's behalf, made the autodialed and prerecorded message calls described herein "on behalf of" Defendant within the meaning of the FCC's Declaratory Rulings and 47 U.S.C. § 227(c)(5).

38. CA is directly liable for the telemarketing calls made on its behalf because CA actively participated in those calls and solicited business directly from the calls.

39. CA was legally responsible for ensuring that its vendors complied with the TCPA, even if CA did not itself make the calls.

40. CA knew (or reasonably should have known) that its vendors were violating the

8

TCPA on its behalf, and failed to take effective steps within their power to force the telemarketer to cease that conduct.

## CLASS ACTION ALLEGATIONS

41. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

42. Plaintiff brings this action on behalf of himself and the following classes (together, the "Classes") pursuant to Federal Rule of Civil Procedure 23.

43. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

(i) The Telemarketing Class: All persons in the United States and its Territories who, since April 20, 2014, received one or more telephone solicitation calls on their cellular telephone from or on behalf of Capital Alliance Group, through an automated telephone dialing system and/or using a prerecorded message, for whom Capital Alliance Group cannot demonstrate prior express consent to receive such phone calls.

(ii) The NDNC Class: All persons in the United States and its Territories whose telephone numbers were on the National Do Not Call Registry, but who received more than one telephone solicitation call within a 12-month period from or on behalf of Capital Alliance since April 20, 2014.

44. Plaintiff Blevins is a member of, and will fairly and adequately represent and protect the interests of, these Classes.

45. Excluded from the Classes are Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is

9

assigned, and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

46. Plaintiff does not know the exact number of members in the Classes and Subclasses, but because Defendant used a prerecording and represents that it does business across the country, Plaintiff reasonably believes Class members number, at minimum, in the hundreds or thousands in each class.

47. Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

48. This Class Action Complaint seeks injunctive relief and money damages.

49. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

50. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

51. Further, all members of the Classes can be identified through records maintained by Defendant and/or its telemarketing agents and/or telephone carriers.

52. There are well-defined, nearly identical, questions of law and fact affecting all parties.

53. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

54. Such common questions of law and fact include, but are not limited to, the following:

    a. Whether Defendant used an automatic telephone dialing system and/or an artificial or prerecorded voice in its calls to Class members' telephones to promote its goods or services.

    b. Whether agents operating on behalf of Defendant used an automatic telephone dialing system in making calls to Class members' cell phones;

    c. Whether Defendant or its agents used an artificial or prerecorded voice in its calls to Class members' cell phones;

    d. Whether the Defendant can meet its burden of showing it obtained prior express consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such calls;

    e. Whether Defendant or its agent made calls for the purpose of selling or encouraging the sale of Defendant's products or services;

    f. Whether Defendant or its agent made more than one call to any customer whose number is on the National Do Not Call Registry in a twelve month period;

    g. Whether Defendant or its agent maintained necessary procedures for compliance with the National Do Not Call Registry;

    h. Whether the Defendant's conduct was knowing and/or willful;

    i. Whether the Defendant is liable for statutory damages, and whether such damages should be trebled; and

    j. Whether the Defendant should be enjoined from engaging in such conduct in the future.

55. As a person who received non-emergency telephone calls using an automatic telephone dialing system and/or an artificial or prerecorded voice or calls, without his prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of the Telemarketing Class who also received such phone calls.

56. As a person whose telephone number was placed on the National Do Not Call List and who received more than one call in a twelve month period, Plaintiff asserts claims that are typical of the NDNC Class.

57. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

58. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

59. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

## COUNT I

**Statutory Violations of the Telephone Consumer Protection Act (47 U.S.C. 227, et seq.) on behalf of the Telemarketing Class**

60. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

61. Capital Alliance violated the TCPA by making, or causing to be made via an agent, calls to the cellular telephones of Plaintiff and members of the Telemarketing Class using an automated dialer and/or pre-recorded voice.

62. As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

63. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

## COUNT II
**Knowing and/or Willful Violation of the Telephone Consumer Protection Act (47 U.S.C. 227, et seq.) on behalf of Telemarketing Class**

64. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

65. Capital Alliance violated the TCPA by making, or causing to be made via an agent, calls to the cellular telephones of Plaintiff and members of the Telemarketing Class using an automated dialer and/or pre-recorded voice.

66. As a result of the Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

67. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

## COUNT III
**Violation of the Telephone Consumer Protection Act (47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d)) on behalf of the NDNC Class**

68. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

69. Capital Alliance violated the TCPA and the Regulations by making, or having its agent make, more than one telephone call within a 12-month period, on its behalf, to Plaintiff and the members of the NDNC Class for the purpose of selling or encouraging the sale of CA's goods and/or services while those members where registered on the National Do Not Call Registry.

70. As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

71. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

## COUNT IV
**Knowing and/or Willful Violation of the Telephone Consumer Protection Act (47 U.S.C. 227, et seq. and 47 C.F.R. §§ 64.1200(d)) on behalf of the NDNC Class**

72. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

73. Capital Alliance knowingly and/or willfully violated the TCPA and the Regulations by making, or having its agent make, more than one telephone call within a 12-month period, on its behalf, to Plaintiff and the members of the NDNC Class for the purpose of selling or encouraging the sale of CA's goods and/or services while those members where registered on the National Do Not Call Registry.

74. As a result of the Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

75. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendant:

A. Injunctive relief prohibiting such violations of the TCPA by the Defendant in the future;

B. As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for themselves and each member of the Telemarketing Class treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C. As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each member of the Telemarketing Class $500 in statutory damages for each and every violation of the TCPA;

D. As a result of the Defendant's willful and/or knowing violations of 47 C.F.R. § 64.1200(d), Plaintiff seeks for himself and each member of the NDNC Class treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

E. As a result of Defendant's statutory violations of 47 C.F.R. § 64.1200(d), Plaintiff seeks for himself and each member of the NDNC Class $500 in statutory damages for each and every violation of the TCPA;

  F. An award of attorneys' fees and costs to counsel for Plaintiff and the Class as permitted by law;

  G. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firm representing Plaintiff as counsel for the Class;

  H. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: April 20, 2018

By: /s/ Matthew R. Wilson
   Matthew R. Wilson

MEYER WILSON CO., LPA
Matthew R. Wilson (Ohio Bar Number 0072925)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (Ohio Bar Number 0091162 )
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*Attorneys for Plaintiff and the Proposed Classes*

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all counts so triable.

Dated: April 20, 2018

By: s/ *Matthew R. Wilson*

MEYER WILSON CO., LPA
Matthew R. Wilson (Ohio Bar No. 0072925)
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr. (Ohio Bar No. 0091162)
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*Attorneys for Plaintiff and the Proposed Classes*