UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JEFFREY BLEVINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br>CAPITAL ALLIANCE GROUP,<br><br>Defendant. | Case No: 2:18-cv-00361-EAS-KAV<br><br><br>DECLARATION OF WILLIAM R. RESTIS IN SUPPORT OF DEFENDANT'S MOTION FOR RELIEF FROM DEFAULT<br><br>Hon. Judge Edmund A. Sargus<br>Hon. Magistrate Kimberly A. Jolson |

I, William R. Restis, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am the managing member of The Restis Law Firm, P.C., and attorney for defendant Capital Alliance Group ("Capital Alliance"). I have personal knowledge of the matters contained in this declaration, and if called upon to testify, I would and could competently do so as set forth herein.

2.      On June 28, 2018, the same day I learned of the existence of this case, and of Capital Alliance's default, I telephoned counsel for Plaintiff Matthew Wilson. I explained that given the *de minimus* amount of time Capital Alliance was in default, the fact that Plaintiff planned to seek a default judgment, the liberal standard for relief from entry of default, the desire to avoid burdening the Court on briefing the issue of default, and the existence of other related litigation in California, the parties should stipulate to a stipulated response deadline.

3.      Mr. Wilson indicated he would consider the matter, and on June 29, 2018, emailed to inform me that he did not believe that the Court would grant a motion for relief from default, and on that basis refused to stipulate.

4.      Also on June 29, 2018, I reiterated Defendant's proposal that the parties stipulate to continuing Defendant's deadline to respond to the Complaint until July 13, 2018. Plaintiff's counsel refused.

5.      Due to the Fourth of July holiday, I was not able to reach any potential local counsel until July 9, 2018. After interviewing several attorneys, Defendant hired local counsel on July 12, 2018.

6.      A true and correct copy of Defendant's proposed answer to the Complaint is attached hereto as Exhibit A.

/ / /

/ / /

7.    Attached hereto as Exhibit B is a true and correct copy of the Order Granting Motion for Final Approval of Class Action Settlement and Motion for Attorney Fees and Incentive Awards in Bee, Denning, Inc. v. Capital Alliance Group, 3:13-cv-2654-BAS-WVG (SD. Cal. Nov. 18, 2016), Dkt No. 81. I printed this Order from the www.pacer.gov official website on July 11, 2018.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct. Executed in San Diego, California on July 13, 2018.


   /s/ William R. Restis
_____

William R. Restis, Esq.

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JEFFREY BLEVINS, individually and on behalf of all others similarly situated, | Case No: 2:18-cv-00361-EAS-KAV |
| Plaintiff, | DEFENDANT'S ANSWER TO COMPLAINT |
| v. | Hon. Judge Edmund A. Sargus<br>Hon. Magistrate Kimberly A. Jolson |
| CAPITAL ALLIANCE GROUP, | |
| Defendant. | |

Defendant Capital Alliance Group ("Capital Alliance" or "Defendant"), by and through its undersigned attorneys, for its Answer to the Complaint filed on April 20, 2018 (Dkt No. 1) by Plaintiff Jeffrey Blevins ("Plaintiff"), now respectfully answers, alleges and follows as set forth below. Defendant expressly denies any allegations which it does not expressly admit or qualify below.

Paragraph No. 1: In a misguided effort to market its business financing services, Capital Alliance Group (hereafter "CA" or "Defendant") established, or caused to be established through a third- party contractor, an automated calling operation to place unsolicited, prerecorded telemarketing calls to the cellular telephones of consumers nationwide.

**ANSWER**: In response to the allegations of paragraph 1, Defendant denies.

Paragraph No. 2: Plaintiff brings this action for statutory damages and other legal and equitable remedies resulting from the illegal actions of CA in contacting Plaintiff and Class Members on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. § 64.1200 (hereinafter referred to as the "TCPA"). Defendant has violated the TCPA by contacting Plaintiff and Class members on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or by using "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A), without their prior express consent within the meaning of the TCPA.

**ANSWER**: In response to the allegations of paragraph 2, Defendant admits only that Plaintiff purports to bring this action under the TCPA.  Defendant denies it violated the TCPA, deny Plaintiff is entitled to the relief he seeks or any relief whatsoever, and deny all remaining allegations of paragraph 2.

Paragraph 3: CA also violated another provisions of the TCPA relating to "do not call" lists. CA violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by making more than one call to Plaintiff and Class Members who placed their telephone numbers on the National Do Not Call Registry ("NDNC").

**ANSWER**: In response to the allegations of paragraph 3, Defendant admits only that Plaintiff purports to bring this action under the TCPA. Defendant denies it violated the TCPA, deny Plaintiff is entitled to the relief he seeks or any relief whatsoever, and deny all remaining allegations of paragraph 3.

Paragraph 4: On behalf of the classes, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized automated telephone calls, and an award of statutory damages to the members of the classes, together with costs and reasonable attorneys' fees.

**ANSWER**: The allegations of paragraph 4 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies Plaintiff has standing to seek or is otherwise entitled to an injunction, and denies that Plaintiff or members of the putative class(es) have standing to seek, or are otherwise entitled to damages, costs and/or attorneys' fees.

Paragraph No. 5: This matter in controversy exceeds $5,000,000, as each member of the proposed Class of presumably thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Further, Plaintiff alleges national classes, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

**ANSWER**: The allegations of paragraph 5 addressing subject matter jurisdiction state legal conclusions to which no response is necessary. To the extent a response is deemed to be required,

Defendant denies that the amount in controversy exceeds $5,000,000, or that Plaintiff has adequately pled, or can establish, the elements to satisfy diversity jurisdiction pursuant to 28 U.S.C. § 1332(d).

Paragraph No. 6: This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

**ANSWER**: In response to the allegations of paragraph 6, Defendant admits that Plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1331, and deny all remaining allegations of this paragraph.

Paragraph No. 7: This Court has personal jurisdiction over Defendant because a substantial part of the events concerning the unauthorized calls at issue occurred in this District, establishing minimum contacts showing Defendant has purposefully availed itself of the resources and protection of the State of Ohio.

**ANSWER**: In response to the allegations of paragraph 7, Defendant denies this Court has personal jurisdiction over it, and further denies that a substantial part of the events concerning this lawsuit occurred in this District, and further denies that Defendant purposefully
availed itself of any activity in Ohio because Defendant does not "transact business" within the State of Ohio.


Paragraph No. 8: Venue is proper in the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because the majority of activities giving rise to the claims took place in the District because Plaintiff received phone calls in this District and Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

**ANSWER**: In response to the allegations of paragraph 8, Defendant denies that venue is proper in the United States District Court for the Southern District of Ohio, and further denies that a substantial part of the alleged events or omissions Plaintiff believes give rise to his claim occurred in this District, and further denies that Defendant "resides" in this District.

Paragraph No. 9: Plaintiff Blevins is, and at all times relevant has been, a resident of the State of Ohio.

**ANSWER**: In response to the allegations of paragraph 9, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of this paragraph, and on that basis denies those allegations.

Paragraph No. 10: Defendant Capital Alliance Group is a nationwide provider of business financing services, primarily in the form of short-term loans. Capital Alliance Group is a limited liability company organized under the laws of the State of California, with a principal place of business in Santa Ana, California. Capital Alliance Group represents that it provides its services in the State of Ohio.

**ANSWER**: In response to the allegations of paragraph 10, Defendant admits it is a limited liability company organized under the laws of the State of California, with a principal place of business in Santa Ana, California, and denies all remaining allegations of paragraph 10.

Paragraph No. 11: In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

**ANSWER**: The allegations of paragraph 11 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 12: The TCPA regulates, among other things, the use of automatic telephone dialing equipment, or "autodialers."

**ANSWER**: The allegations of paragraph 12 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 13: Specifically, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

**ANSWER**: The allegations of paragraph 13 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 14: According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

**ANSWER**: The allegations of paragraph 14 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 15: The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

**ANSWER**: The allegations of paragraph 15 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 16: On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party.

**ANSWER**: The allegations of paragraph 16 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 17: With regard to calls or texts made for telemarketing purposes, the Federal Communication Commission has instructed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

**ANSWER**: The allegations of paragraph 17 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 18: In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made or a text is sent bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

**ANSWER**: The allegations of paragraph 18 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 19: The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

**ANSWER**: The allegations of paragraph 19 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 20: On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."

**ANSWER**: The allegations of paragraph 20 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 21: More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

**ANSWER**: The allegations of paragraph 21 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 22: The FCC has repeatedly rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

**ANSWER**: The allegations of paragraph 22 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 23: The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer

information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

**ANSWER**: The allegations of paragraph 23 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 24: Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**ANSWER**: The allegations of paragraph 24 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 25: The TCPA and its regulations also make it unlawful to:

initiate any telephone solicitation to . . . a residential telephone subscriber who has registered his or her telephone number on the national-do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

47 C.F.R. §§ 64.1200.

**ANSWER**: The allegations of paragraph 25 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 26: The TCPA and the Regulations mandate that all telemarketers institute certain minimum procedures and standards prior to placing any telemarketing call. If such mandatory minimum procedures are not instituted, then each telemarketing call constitutes a violation of the TCPA, 47 U.S.C. § 227(c)(5), and the Regulations, 47 C.F.R. § 64.1200(d). Where a violation has occurred, any person receiving two or more calls has a private right of action.

**ANSWER**: The allegations of paragraph 26 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 27: Plaintiff Blevins is the owner and sole proprietor of Interior Creations, a small business that performs home remodeling and improvement projects.

**ANSWER**: In response to the allegations of paragraph 27, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of this paragraph and therefore denies those allegations.

Paragraph No. 28: Plaintiff Blevins is the exclusive user of the telephone assigned the number ending in 3503 and the account holder of record for that account. For several years, the number has been registered with the NDNC.

**ANSWER**: In response to the allegations of paragraph 28, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of this paragraph and therefore denies those allegations.

Paragraph No. 29: On numerous occasions, but most recently on April 7, 2018, Plaintiff Blevins received an unsolicited pre-recorded voice mail on his cellular telephone with the telephone number 216-810-1861 in his caller ID. The message was purportedly from "Rachel" offering him "up to $250,000" in credit toward his business.

**ANSWER**: In response to the allegations of paragraph 28, Defendant denies.

<u>Paragraph No. 30</u>: In order to gain more information regarding the source of the call, Blevins returned the call and left a message with the answering service, seeking additional information. On April 9, 2018, he received an email from Eric Knecht, who identified himself as representing Capital Alliance Group.

**ANSWER**: In response to the allegations of paragraph 30, Defendant denies.

Paragraph No. 31: Prior to receiving the calls at issue, Plaintiff Blevins has never contacted CA for any purpose, and has no business relationship with CA.

**ANSWER**: In response to the allegations of paragraph 31, Defendant denies.

Paragraph No. 32: Plaintiff Blevins received all calls as described above on his cellular telephone assigned a number ending in 3503.

**ANSWER**: In response to the allegations of paragraph 32, Defendant denies.

Paragraph No. 33: Plaintiff Blevins understood the purpose of CA's calls was to market its services and solicit business from him.

**ANSWER**: In response to the allegations of paragraph 33, Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of this paragraph and therefore denies those allegations.

Paragraph No. 34: Plaintiff Blevins did not consent to being called by CA for telemarketing purposes and the calls received from Defendant were an intrusion into Plaintiff's privacy and caused Plaintiff Blevins annoyance and an unnecessary expenditure of his time and efforts.

**ANSWER**: In response to the allegations of paragraph 34, Defendant denies.

Paragraph No. 35: CA is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

**ANSWER**: In response to the allegations of paragraph 35, Defendant denies.

Paragraph No. 35: CA is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

**ANSWER**: In response to the allegations of paragraph 35, Defendant denies.

Paragraph No. 36: CA is a nationwide provider of business funding services, in the forms of loans or other financial products.

**ANSWER**: In response to the allegations of paragraph 36, Defendant denies.

Paragraph No. 37: CA, or some unnamed entity working on CA's behalf, made the autodialed and prerecorded message calls described herein "on behalf of" Defendant within the meaning of the FCC's Declaratory Rulings and 47 U.S.C. § 227(c)(5).

**ANSWER**: In response to the allegations of paragraph 37, Defendant denies. Defendant utilizes a 'point-and-click' dialing system, paired with a cloud-based pass-through service that requires human intervention at every step. Defendant does not make calls using a pre-recorded voice. Defendant is in compliance with the Order Granting Motion for Final Approval of Class Action Settlement in *Bee, Denning, Inc. v. Capital Alliance Group*, No. 13-cv-2654-BAS(WVG) (S.D. Cal.) entered on November 18, 2016 at Dkt No. 81, at p. 5, ¶ H.

Paragraph No. 38: CA is directly liable for the telemarketing calls made on its behalf because CA actively participated in those calls and solicited business directly from the calls.

**ANSWER**: In response to the allegations of paragraph 38, Defendant denies.

Paragraph No. 39: CA was legally responsible for ensuring that its vendors complied with the TCPA, even if CA did not itself make the calls.

**ANSWER**: In response to the allegations of paragraph 39, Defendant denies.

Paragraph No. 40: CA knew (or reasonably should have known) that its vendors were violating the TCPA on its behalf, and failed to take effective steps within their power to force the telemarketer to cease that conduct.

**ANSWER**: In response to the allegations of paragraph 40, Defendant denies.

Paragraph No. 41: Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

**ANSWER**: The allegations of paragraph 41 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 42: Plaintiff brings this action on behalf of himself and the following classes (together, the "Classes") pursuant to Federal Rule of Civil Procedure 23.

**ANSWER**: The allegations of paragraph 42 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 43: Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

(i) The Telemarketing Class: All persons in the United States and its Territories who, since April 20, 2014, received one or more telephone solicitation calls on their cellular telephone from or on behalf of Capital Alliance Group, through an automated telephone dialing system and/or using a prerecorded message, for whom Capital Alliance Group cannot demonstrate prior express consent to receive such phone calls.

(ii) The NDNC Class: All persons in the United States and its Territories whose telephone numbers were on the National Do Not Call Registry, but who received more than one telephone solicitation call within a 12-month period from or on behalf of Capital Alliance since April 20, 2014.

**ANSWER**: In response to the allegations of paragraph 43, Defendant denies that Plaintiff's proposed class definition is sufficiently definite or that putative class members are identifiable or ascertainable, or that Plaintiff has standing to represent such a class, and denies all remaining allegations of paragraph 43.

Paragraph No. 44: Plaintiff Blevins is a member of, and will fairly and adequately represent and protect the interests of, these Classes.

**ANSWER**: In response to the allegations of paragraph 44, Defendant denies.

Paragraph No. 45: Excluded from the Classes are Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

**ANSWER**: The allegations of paragraph 45 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 46: Plaintiff does not know the exact number of members in the Classes and Subclasses, but because Defendant used a prerecording and represents that it does business across the country, Plaintiff reasonably believes Class members number, at minimum, in the hundreds or thousands in each class.

**ANSWER**: In response to the allegations of paragraph 46, Defendant denies.

Paragraph No. 47: Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

**ANSWER**: In response to the allegations of paragraph 47, Defendant denies.

Paragraph No. 48: This Class Action Complaint seeks injunctive relief and money damages.

**ANSWER**: The allegations of paragraph 48 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies Plaintiff is has standing to assert, or is entitled to, injunctive relief or money damages.

Paragraph No. 49: The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

**ANSWER**: In response to the allegations of paragraph 49, Defendant denies.

Paragraph No. 50: Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

**ANSWER**: In response to the allegations of paragraph 50, Defendant denies.

Paragraph No. 51: Further, all members of the Classes can be identified through records maintained by Defendant and/or its telemarketing agents and/or telephone carriers.

**ANSWER**: In response to the allegations of paragraph 51, Defendant denies.

Paragraph No. 52: There are well-defined, nearly identical, questions of law and fact affecting all parties.

**ANSWER**: In response to the allegations of paragraph 52, Defendant denies.

Paragraph No. 53: The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

**ANSWER**: In response to the allegations of paragraph 53, Defendant denies.

Paragraph No. 54: Such common questions of law and fact include, but are not limited to, the following:

a.  Whether Defendant used an automatic telephone dialing system and/or an artificial or prerecorded voice in its calls to Class members' telephones to promote its goods or services.

b.  Whether agents operating on behalf of Defendant used an automatic telephone dialing system in making calls to Class members' cell phones;

c.  Whether Defendant or its agents used an artificial or prerecorded voice in its calls to Class members' cell phones;

d.  Whether the Defendant can meet its burden of showing it obtained prior express consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such calls;

e.  Whether Defendant or its agent made calls for the purpose of selling or encouraging the sale of Defendant's products or services;

f.  Whether Defendant or its agent made more than one call to any customer whose number is on the National Do Not Call Registry in a twelve month period;

g.  Whether Defendant or its agent maintained necessary procedures for compliance with the National Do Not Call Registry;

h.  Whether the Defendant's conduct was knowing and/or willful;

i.  Whether the Defendant is liable for statutory damages, and whether such damages should be trebled; and

j.  Whether the Defendant should be enjoined from engaging in such conduct in the future.

**ANSWER**: In response to the allegations of paragraph 54, Defendant denies.

Paragraph No. 55: As a person who received non-emergency telephone calls using an automatic telephone dialing system and/or an artificial or prerecorded voice or calls, without his prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of the Telemarketing Class who also received such phone calls.

**ANSWER**: In response to the allegations of paragraph 55, Defendant denies.

Paragraph No. 56: As a person whose telephone number was placed on the National Do Not Call List and who received more than one call in a twelve month period, Plaintiff asserts claims that are typical of the NDNC Class.

**ANSWER**: In response to the allegations of paragraph 56, Defendant denies.

Paragraph No. 57: Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

**ANSWER**: In response to the allegations of paragraph 57, Defendant denies.

Paragraph No. 58: Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel  are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

**ANSWER**: In response to the allegations of paragraph 58, Defendant denies.

Paragraph No. 59: Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

**ANSWER**: In response to the allegations of paragraph 59, Defendant denies.

Paragraph No. 60: Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

**ANSWER**: The allegations of paragraph 60 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies

Paragraph No. 61: Capital Alliance violated the TCPA by making, or causing to be made via an agent, calls to the cellular telephones of Plaintiff and members of the Telemarketing Class using an automated dialer and/or pre-recorded voice.

**ANSWER**: In response to the allegations of paragraph 61, Defendant denies. Defendant utilizes a 'point-and-click' dialing system, paired with a cloud-based pass-through service that requires human intervention at every step. Defendant does not make calls using a pre-recorded voice. Defendant is in compliance with the Order Granting Motion for Final Approval of Class Action Settlement in *Bee, Denning, Inc. v. Capital Alliance Group*, No. 13-cv-2654-BAS(WVG) (S.D. Cal.) entered on November 18, 2016 at Dkt No. 81, at p. 5, ¶ H.

Paragraph No. 62: As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

**ANSWER**: In response to the allegations of paragraph 62, Defendant denies.

Paragraph No. 63: Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

**ANSWER**: In response to the allegations of paragraph 63, Defendant denies.

Paragraph No. 64: Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

ANSWER: The allegations of paragraph 64 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies

Paragraph No. 65: Capital Alliance violated the TCPA by making, or causing to be made via an agent, calls to the cellular telephones of Plaintiff and members of the Telemarketing Class using an automated dialer and/or pre-recorded voice.

ANSWER: In response to the allegations of paragraph 65, Defendant denies. Defendant utilizes a 'point-and-click' dialing system, paired with a cloud-based pass-through service that requires human intervention at every step. Defendant does not make calls using a pre-recorded voice. Defendant is in compliance with the Order Granting Motion for Final Approval of Class Action Settlement in *Bee, Denning, Inc. v. Capital Alliance Group*, No. 13-cv-2654-BAS(WVG) (S.D. Cal.) entered on November 18, 2016 at Dkt No. 81, at p. 5, ¶ H.

Paragraph No. 66: As a result of the Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

ANSWER: In response to the allegations of paragraph 66, Defendant denies.

Paragraph No. 67: Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

ANSWER: In response to the allegations of paragraph 67, Defendant denies.

Paragraph No. 68: Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

**ANSWER**: The allegations of paragraph 68 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 69: Capital Alliance violated the TCPA and the Regulations by making, or having its agent make, more than one telephone call within a 12-month period, on its behalf, to Plaintiff and the members of the NDNC Class for the purpose of selling or encouraging the sale of CA's goods and/or services while those members where registered on the National Do Not Call Registry.

**ANSWER**: In response to the allegations of paragraph 69, Defendant denies. Defendant does not make calls to 'residential' telephone numbers, only to publicly listed business numbers.

Paragraph No. 70: As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

**ANSWER**: In response to the allegations of paragraph 70, Defendant denies.

Paragraph No. 71: Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

**ANSWER**: In response to the allegations of paragraph 71, Defendant denies.

Paragraph No. 72: Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

**ANSWER**: The allegations of paragraph 72 state legal conclusions to which no response is necessary. To the extent a response is deemed to be required, Defendant denies.

Paragraph No. 73: Capital Alliance knowingly and/or willfully violated the TCPA and the Regulations by making, or having its agent make, more than one telephone call within a 12- month period, on its behalf, to Plaintiff and the members of the NDNC Class for the purpose of selling or

encouraging the sale of CA's goods and/or services while those members where registered on the National Do Not Call Registry.

**ANSWER**: In response to the allegations of paragraph 73, Defendant denies. Defendant does not make calls to 'residential' telephone numbers, only to publicly listed business numbers.

Paragraph No. 74: As a result of the Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

**ANSWER**: In response to the allegations of paragraph 74, Defendant denies.

Paragraph No. 75: Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

**ANSWER**: In response to the allegations of paragraph 75, Defendant denies.

REQUEST FOR RELIEF: WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendant:

A.      Injunctive relief prohibiting such violations of the TCPA by the Defendant in the future;

B.      As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for themselves and each member of the Telemarketing Class treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C.      As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each member of the Telemarketing Class $500 in statutory damages for each and every violation of the TCPA;

D.      As a result of the Defendant's willful and/or knowing violations of 47 C.F.R. § 64.1200(d), Plaintiff seeks for himself and each member of the NDNC Class treble damages, as

provided by statute, of up to $1,500 for each and every violation of the TCPA;

E.      As a result of Defendant's statutory violations of 47 C.F.R. § 64.1200(d), Plaintiff seeks for himself and each member of the NDNC Class $500 in statutory damages for each and every violation of the TCPA;

F.      An award of attorneys' fees and costs to counsel for Plaintiff and the Class as permitted by law;

G.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firm representing Plaintiff as counsel for the Class;

H.      Such other relief as the Court deems just and proper.

**ANSWER**: In response to Plaintiff's Request for Relief, Defendant denies that Plaintiff, or any member of any alleged class, are entitled to any form of relief from this action.

## DEFENSES TO PLAINTIFF'S COMPLAINT

Without assuming the burden of proof where it otherwise lies with Plaintiff, Defendant asserts the following defenses to Plaintiff's Complaint.

## FIRST DEFENSE

Defendant states the Plaintiff's Complaint fails to state a claim upon which relief may be granted and should therefore be dismissed pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

## SECOND DEFENSE

The Complaint is barred, in whole or in part, because the conduct about which Plaintiff complains is permitted by an injunction issued in *Bee, Denning, Inc. v. Capital Alliance Group,* No. 13-cv-02654-BAS(WVG) (S.D. Cal.) on November 18, 2016.

## THIRD DEFENSE

The Complaint is barred, in whole or in part, to the extent the Plaintiff, or any member of the alleged class, publicly listed his/their cellular phone number as the phone number for a business.

### FOURTH DEFENSE

Defendant acted in good faith and specifically denies it engaged in a willful and knowing violation of the TCPA toward Plaintiff or any member of the alleged class.

### FIFTH DEFENSE

Any violation of the TCPA was unintentional and resulted from a bona fide error notwithstanding the reasonable practices and procedures established and implemented by Defendant, to effectively prevent communications in violation of the TCPA. *See* 47 U.S.C. § 227(c)(5).

### SIXTH DEFENSE

Plaintiff's claims, and those of the alleged class, are barred in whole or in part because Plaintiff and members of the alleged class, were not the intended recipient of the telephone calls and/or were not the sole subscriber to the telephone number.

### SEVENTH DEFENSE

Plaintiff's claims, and those of the alleged class, are barred in whole or in part because Defendant did not use an "automatic telephone dialing system" or "prerecording messaging system" to contact Plaintiff or members of the alleged class.

### EIGHTH DEFENSE

Plaintiff's claims, and those of the alleged class, may be subject to a pre-dispute binding arbitration agreement. 9 U.S.C. § 1, et seq.

### NINTH DEFENSE

The Complaint is barred, in whole or in part, by the conduct, actions and inactions of Plaintiff, which amount to and constitute estoppel, wavier, laches, unclean hands, and other equitable doctrines as a bar to the claims of the Plaintiff.

### TENTH DEFENSE

Plaintiff's claims, and those of the alleged class, are barred in whole or in part because Plaintiff and members of the alleged class have not suffered actual damages and have failed to mitigate damages, if any.

## ELEVENTH DEFENSE

Plaintiff is not entitled to attorneys' fees.

## TWELFTH DEFENSE

If Plaintiff or members of the alleged class, suffered or sustained any loss, injury or damage, the same was directly and proximately caused and contributed to by the intervening acts of others and not by Defendant.

## THIRTEENTH DEFENSE

Plaintiff's claims, and those of the alleged class, are barred in whole or in part to the extent Plaintiff, or members of the alleged class, were not charged for any calls made by Defendant. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

## FOURTEENTH DEFENSE

Plaintiff's claims, and those of the alleged class, are barred because Plaintiff, and members of the alleged class, consented to, ratified, or acquiesced in all of the alleged acts of which they complain.

## FIFTEENTH DEFENSE

The imposition of liability and/or statutory damages under the TCPA, as sought in the Complaint, would violate provisions of the United States Constitution, including the Due Process Clause and prohibition of excessive fines and punishment.

## SIXTEENTH DEFENSE

The interpretations of the TCPA, upon which the Complaint is based, are unconstitutionally vague and overbroad, and thus violate provisions of the United States Constitution, including the Due Process Clause.

## SEVENTEENTH DEFENSE

The interpretations of the TCPA upon which the Complaint is based, are based on arbitrary and capricious actions taken by the Federal Communications Commission. *See ACA Int'l v. FCC*, 885 F.3d 687, 701-04 (D.C. Cir. 2018).

## EIGHTEENTH DEFENSE

Defendant incorporates herein by reference all provisions set forth within 47 U.S.C. § 227 and 47 C.F.R. § 64.1200 (including prior versions of this statute and regulation) and relies herein on any safe harbor provisions, exemptions, exceptions, limitations, conditions, or other defenses that may be set forth therein.

## NINTEENTH DEFENSE

Defendant states that, following completion of discovery and investigation into this matter, additional defenses may become available. Defendants reserves the right to assert additional defenses, counterclaims, and claims for set-off that may be discovered in the course of these proceedings. Defendants further reserves the right to assert additional defenses, counterclaims, and claims for set-off.

WHEREFORE, having fully responded to the Complaint of the Plaintiff, Defendant, denies the Plaintiff is entitled to any of the relief requested in the Complaint, and prays that the Complaint be dismissed in its entirely, with prejudice. Defendant further prays that a judgment be entered in its favor and for such other relief as the Court deems just and appropriate.

Dated July XX, 2018                    Respectfully submitted,

                                       THE RESTIS LAW FIRM, P.C.

                                       _____

William R. Restis, Esq.
550 West C Street, Suite 1760
San Diego, CA 92101
Tel:  +1.619.270.8383
Fax:  +1.619.752.1552
Email: william@restislaw.com

ATTORNEY FOR DEFENDANTS
*(Pro hac vice forthcoming)*

# EXHIBIT B

1

2

3

4

5

6

7

8

9 **UNITED STATES DISTRICT COURT**

10 **SOUTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| BEE, DENNING, INC., d/b/a PRACTICE PERFORMANCE GROUP; and GREGORY CHICK, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>CAPITAL ALLIANCE GROUP and NARIN CHARANVATTANAKIT,<br><br>                    Defendants. | Case No. 13-cv-02654-BAS(WVG)<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEY FEES AND INCENTIVE AWARDS**<br><br>**[ECF Nos. 76, 77]** |
| DANIELA TORMAN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>CAPITAL ALLIANCE GROUP, et al.,<br><br>                    Defendants. | Consolidated with:<br>Case No. 14-cv-02915-BAS(WVG) |

– 1 –

The Court having held a Final Approval Hearing on November 14, 2016, and having considered the papers submitted to the Court and proceedings to date, and having considered all matters submitted to it at the Final Approval Hearing, hereby **ORDERS, ADJUDGES AND DECREES** as follows:

1.    The Settlement Agreement dated May 17, 2016, including its exhibits (the "Settlement Agreement"), and the definition of words and terms contained therein are incorporated by reference in this Order. The terms of this Court's Preliminary Approval Order are also incorporated by reference in this Order.

2.    This Court has jurisdiction over the subject matter of the Actions and over the Parties, including all members of the following Settlement Classes certified for settlement purposes in this Court's Preliminary Approval Order:

A.    JUNK FAX CLASS

All persons or entities in the United States who, on or after November 5, 2009, were sent by or on behalf of Defendants one or more unsolicited advertisements by telephone facsimile machine that bear the business name Community, Community Business Funding, Fast Working Capital, Snap Business Funding, Zoom Capital, Nextday Business Loans, 3DayLoans, Bank Capital, FundQuik, Prompt, or Simple Business Funding.

B.    AUTOMATED CALL CLASS

All persons or entities in the United States who, on or after November 5, 2009, received a call on their cellular telephone with a prerecorded voice message from the number 888-364-6330 that was made by or on behalf of Defendants.

3.    The Settlement Classes are certified because:

    a.    The classes as defined are sufficiently numerous such that joinder is impracticable;

b. Common questions of law and fact predominate over any questions affecting only individual Class Members, and include whether or not Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA");

c. The claims of Plaintiffs Bee, Denning, Inc., d/b/a Practice Performance Group, Gregory Chick, and Daniela Torman are typical of the Class Members' claims;

d. Plaintiffs Bee, Denning, Inc., d/b/a Practice Performance Group, Gregory Chick, and Daniela Torman are appropriate and adequate representatives for the Class and their attorneys, Beth E. Terrell and Terrell Marshall Law Group PLLC, Candice E. Renka and Marquis Aurbach Coffing, and Gary E. Mason, Whitfield Bryson & Mason LLP, are qualified to serve as counsel for Plaintiffs and the Settlement Class;

e. Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; and

f. This action is manageable as a class action.

4. Notice, although not required, was given to the Classes pursuant to the Preliminary Approval Order and the Settlement Agreement;

5. The dissemination of Notice, as provided for in the Preliminary Approval Order and the Settlement Agreement, constituted the best practicable notice under the circumstances to all Class Members and fully met the requirements of Fed. R. Civ. P. 23, the Due Process Clause of the United States Constitution and any other applicable law;

6. No members of the Settlement Classes objected to the Settlement Agreement; and

7. The Settlement Agreement is the product of arm's length settlement negotiations between Plaintiffs, Class Counsel and Defendants. The Settlement

1    Agreement is fair, reasonable and adequate.

2    **THEREFORE, IT IS HEREBY ORDERED:**

3        A.    That the Settlement Agreement is finally approved and shall be

4    implemented pursuant to its terms;

5        B.    That the Court hereby dismisses with prejudice all claims asserted by

6    the Plaintiffs against Defendants and dismisses without prejudice, the damages

7    claims of the Class Members;

8        C.    That this Court awards to Class Counsel their costs in the amount of

9    $22,096, which this Court finds to be fair and reasonable in light of the time, expense,

10   and complexity of this litigation;

11       D.    That this Court approves payment of $4,819 to each named Plaintiff for

12   his or her damages and services to the Settlement Classes;

13       E.    That this Court reserves exclusive and continuing jurisdiction and venue

14   with respect to the consummation, implementation, enforcement, construction,

15   interpretation, performance and administration of the Settlement Agreement;

16       F.    That, except as otherwise provided in the Settlement Agreement or

17   herein, the parties are to bear their own attorneys' fees and costs;

18       G.    That the absent Class members retain their right to bring lawsuits for

19   damages against Defendant for violations of the TCPA; and

20       H.    That Defendants are ordered to comply with the following injunctive

21   relief, as described in the Settlement Agreement:

22           1.    Defendants and Defendants' successors shall establish written

23   procedures for TCPA compliance.

24           2.    Defendants and Defendants' successors shall conduct annual

25   training sessions directed to TCPA compliance.

26           3.    Defendants and Defendants' successors shall maintain a list of

27   telephone numbers of persons who request not to be contacted.

28           4.    Defendants and Defendants' successors shall subscribe to a

1  version of the national do-not-call registry obtained no more than three months prior

2  to the date any call is made (with records documenting such compliance).

3       5.    Defendants and Defendants' successors shall establish internal

4  processes to ensure that Defendants and Defendants' successors do not sell, rent,

5  lease, purchase or use the do-not-call database in any manner except in compliance

6  with TCPA regulations.

7       6.    Defendants and Defendants' successors shall scrub for cellular

8  telephones before making autodialed calls or calls made with an artificial voice or

9  use or prerecorded messages.

10      7.    Defendants and Defendants' successors shall not call cellular

11  telephones prior to receipt of the express written permission of the intended recipient,

12  including the intended recipient's signature.

13      8.    All prerecorded messages, whether delivered by automated

14  dialing equipment or not, must identify Capital Alliance or any successor entity, and

15  the specific "d/b/a" as the entity responsible for initiating the call, along with the

16  telephone number that can be used during normal business hours to ask not to be

17  called again.

18      9.    All fax transmissions that include "unsolicited advertisements" as

19  defined in 47 U.S.C. §§ 227(a)(4) must be preceded by the receipt of the express

20  written permission of the intended recipient, including the intended recipient's

21  signature.

22      10.   Defendants and Defendants' successors must maintain records

23  demonstrating that recipients have provided such express permission to send fax

24  advertisements.

25      **IT IS SO ORDERED.**

26

27  **DATED: November 16, 2016**

28
                                        **Hon. Cynthia Bashant**
                                        **United States District Judge**

13cv2654