**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Jeffrey Blevins, et al., | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:18-cv-364 |
| | : | |
| v. | : | Chief Judge Edmund A. Sargus, Jr. |
| | : | |
| Capital Alliance Group, | : | Magistrate Judge Jolson |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT CAPITAL ALLIANCE GROUP'S
MOTION FOR RELIEF FROM DEFAULT**

**I.     SUMMARY OF ARGUMENT**

On April 20, 2018, Plaintiff filed a complaint in the above-referenced matter, asserting claims on behalf of the named Plaintiff Jeffrey Blevins and a class of similarly situated persons who received telemarketing text messages from Defendant Capital Alliance Group ("Capital Alliance"). (Dkt. No. 1).  The complaint made it perfectly clear – to a lay person, to anyone – that Plaintiff sought relief on behalf of a class.  Upon receiving the complaint, the CEO of Capital Alliance, as stated in his own sworn declaration, believed that he could unilaterally avoid liability to the proposed class members by ignoring this case.  (Dkt. No. 9-2, at 5).  But Mr. Charanvattanakit was mistaken—a fact he no doubt would have learned if he had bothered to consult with his counsel, who was representing Capital Alliance at that very time *in a different TCPA class action* in which Capital Alliance *had also defaulted*.  *See Northrup v. Capital Alliance Group,* Case No. 8:18-cv-00023-JLS-DFM (C.D.Cal.).  Capital Alliance, having now apparently concluded that it does not have a magic bullet to avoid class liability, now wishes to participate in the judicial process, asserting a host of justifications that are factually and legally

incorrect. Capital Alliance's flagrant contempt for this Court and its rules should not be rewarded. Plaintiff respectfully requests that the Court deny Capital Alliance's motion for relief from the default, and instead hold it accountable for its actions.

## II. ARGUMENT

In determining whether a defendant who defaults should receive relief, the Court should consider "(1) [w]hether the plaintiff will be prejudiced; (2) [w]hether the defendant has a meritorious defense; and (3) [w]hether culpable conduct of the defendant led to the default." *United Coin Meter Co., Inc. v. Seaboard Coastline RR.,* 705 F.2d 839, 845 (6th Cir. 1983) (quoting *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir.1982) (internal quotation omitted)). "When asked to set aside an entry of default, a court considers the . . . defendant's culpability, in the general context of determining whether a petitioner is deserving of equitable relief." *Waifersong, Ltd Inc. v. Classic Music Vending,* 976 F.2d 290, 292 (6th Circ. 1992). "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 194 (6th Cir. 1986). Defendant in no way deserves the judicial grace that it wishes the Court to bestow upon it.

### A. Defendant Admits It Engaged in an Intentional Scheme to Thwart Relief for Class Members, thus Demonstrating Culpable Conduct

In response to receiving the class action complaint, the Defendant sought to unilaterally cut off relief for every person in the class other than Mr. Blevins by taking a default. Defendant believed that this would insulate it from being held accountable as to other class members. Capital Alliance CEO Narin Charanvattanakit *says so himself* in his declaration in support of the Motion for Relief. *See* Dkt. No. 9-2, at 5 ("It was my understanding that failing to respond to

this Complaint would allow Plaintiff to obtain a judgment for his maximum amount of alleged damages, or $1,500.")

Defendant is a seasoned and frequent TCPA class action litigant.  Indeed, while Mr. Charanvattanakit was calculating his escape from the case in this Court, he was simultaneously attempting to get out from under *another default* in *another TCPA class action* in the Central District of California.  See *Northrup v. Capital Alliance Group,* Case No. 8:18-cv-00023-JLS-DFM (C.D.Cal.).  In fact, Defendant had hired one of the law firms now representing it in this action to appear on Defendant's behalf in the *Northrup* case to contest default in that case *the day before the present action was even filed*.  See *Northrup*, Dkt. No. 18 (noticing an appearance of William Restis on April 23, 2018).  But those are not the only TCPA class actions in which Defendant has been a party: *see also*, *Neumeyer v. Capital Alliance Group,* Case No. 3:18-cv-00759 (S.D.Cal.) (class action alleging TCPA violations in which Capital Alliance has also defaulted); and *Bee, Denning, Inc. v. Capital Alliance Group*, Case No. 13-cv-2654 (S.D.Cal.) (class action case alleging TCPA violations, settling in 2016 for injunctive relief).

Defendant did not take a default here as a result of some innocent mistake, or any other sort of excusable circumstance; Defendant took a default as a deliberate strategic choice, one that it believed would limit its exposure to Mr. Blevins' claim only.  Defendant believed it could short-circuit the class action process, using default as its tool.  That Defendant was mistaken in the viability of that tactic does not change its intent or its blameworthiness.

For this reason, this case is categorically different from run-of-the-mill scenarios discussed in most of the case law regarding relief from default.  As the Ninth Circuit explained, in most cases, "[t]he only outcome that such a failure [to respond to the complaint] could have earned him was what he received: a default and a heightened possibility of the loss of his

property. . . ." *United States v. Signed Personal Check No. 730*, 615 F.3d 1085, 1093 (9th Cir. 2010). But here, Defendant sought to do something different, implicating "conduct by parties that is calculated to help them retain property in their possession, and avoid liability by staying out of court. . . ." *Id.* at 1094. What Defendant sought to do was to thwart judicial proceedings as to the claims of all class members besides the named plaintiff.

Defendant should reap what it has sown with its manipulative strategy: it should be required to live with the consequences of its choice, and be held to default.

**B.     Defendant Does Not Have Meritorious Defenses**

Defendant asserts that it has meritorious defenses that it intends to present if it is granted relief from default. But these purportedly "meritorious" defenses are either not meritorious at all, or are not related to the default, and thus provide no basis for relief.

First, Defendant asserts that the dialing system that it purportedly used to make the calls to Plaintiff is not an automated telephone dialing system ("ATDS") under the TCPA. Dkt. No 9, at 5-6. But Plaintiff received a *pre-recorded message* from Defendant. *See* Dkt. No. 1, at ¶ 29 ("On numerous occasions, but most recently on April 7, 2018, Plaintiff Blevins received an unsolicited pre-recorded voice mail on his cellular telephone with the telephone number 216-810-1861 in his caller ID. The message was purportedly from 'Rachel' offering him 'up to $250,000" in credit toward his business.'") The TCPA makes it illegal to make calls "using any automatic telephone dialing system *or* an artificial or prerecorded voice . . ." 47 U.S.C. § 227(b)(1)(A) (emphasis added). Thus, the nature of the dialing system is irrelevant, since sending an unsolicited pre-recorded message is a violation. Moreover, Defendant knows perfectly well that it made pre-recorded calls, if for no other reason that Plaintiff's counsel provided a recording of one such pre-recorded call to counsel for Defendant recently. *See* Ex. A,

Declaration of Matthew R. Wilson, at ¶ 2. Thus, the assertion by Defendant that it "does not make calls using a pre-recorded voice," (Dkt. No. 9, at 6), is mistaken, to put it charitably.

Second, Defendant asserts that Plaintiff's cell phone is "listed" as a business phone, and thus is not subject to the National Do Not Call registry restrictions. While Plaintiff Blevins is indeed a business owner, his cellular telephone is also used for his personal purposes. Telemarketers like Defendant are prohibited from calling numbers to parties who have "registered his or her telephone number on the national-do-not-call registry. . . ." 47 C.F.R. § 64.1200. Plaintiff's number is on that registry, and thus the calls are a violation. So not only do Defendant's assertions not constitute a "complete defense" to the NDNC claim, they provide no defense at all.

Defendant also asserts that this case is properly before the United States District Court for the Southern District of California, apparently as part of the *Bee* case, somehow. But whether the case should be transferred or not (it should not be transferred), that is not a "meritorious defense" (or any defense) to the claims anyway. If Defendant thought that this case should be adjudicated in some other court, it should have shown up to defend itself in this case and moved to transfer it in the appropriate way. The question presently before the Court is whether Defendant should be held to the consequences of its intentional decision to take a default.

Finally, Defendant raises objections to the certification of a class. Plaintiff understands, and Rule 23 and the case law is clear, that an entry of default before the Court has decided class certification does not automatically mean that Plaintiff is entitled to certification of a class. Plaintiff must still show that the proposed class meets the prerequisites for class certification. *See Toler v. Global College of Natural Medicine, Inc.,* Case No. 13-10433, 2015 WL 1611274, at * 3 (E.D.Mich. Apr. 10, 2015) ("As a threshold matter, the Clerk's entry of default against

Defendants does not alter the Court's class certification analysis."); *Brown v. City of Detroit,* Case No. 10-12162, 2012 WL 4470433, at * 4 (E.D.Mich. Sept. 27, 2012) ("Whether class certification is appropriate in this case, the Court observed, was not resolved by the default."). Plaintiff intends to do precisely that after he has gathered, in discovery, the (in this case, limited amount of) evidence necessary to that showing. But as with transfer, class certification is a question for another day, after that limited amount of discovery has occurred and Plaintiff has moved for certification. Class certification is simply irrelevant to whether Defendant should be granted relief from the default that it voluntarily chose.

C. **Plaintiff Is and Would Be Prejudiced By Defendant's Intentional Conduct**

Finally, Defendant asserts that there will be no prejudice to Plaintiff in this case. Under Defendant's theory of prejudice, so long as a defaulting party is *then* ready to defend the case, there could be no prejudice to the plaintiff, as the only harm would be "the passage of time."[1] Dkt. No. 9, at 8. But, under that understanding, a plaintiff could *never* be prejudiced by relief from a default. Under such a reading, the prejudice prong would swallow the other prongs of the test, since, absent some unique circumstances, plaintiff would never be able to show prejudice caused by the default, and thus relief from default would be always be proper.

Instead, prejudice here involves the fundamental fairness and balance of equities in granting relief to the defaulted party. As set forth above, Defendant engaged in a deliberate and intentional strategy to deprive class members of the opportunity to assert claims against the Defendant. Where the defaulting party engages in a "course of action . . . to obfuscate, delay,

---

[1] Defendant appears to *blame the Plaintiff* for the necessity of its motion and any delay, as "had Plaintiff not insisted on pursuing default, this case would now be at issue." Dkt. No. 9, at 8. Beyond the inappropriate "blaming the victim" approach, Plaintiff would note that he moved for a default in this case, in part, in response to the Court's Order to Show Cause. *See* Dkt. No. 4.

and frustrate . . ." the progress of litigation, this represents prejudice to the plaintiff.  *Southern Elec. Health Fund,* 146 F.App'x at 778.  In *Southern Elec. Health Fund*, the only "prejudice" the plaintiff suffered was a delay, showing that in this context, the prejudice analysis is fundamentally about equity and fairness.  This is even more true here, where Defendant has an established practice of using defaults as a litigation and business tactic.  In this light, the balance of equities tilt strongly in favor of the Plaintiff.

### III.     CONCLUSION

Defendant made an intentional decision to take a default in this case.  It should be held to its decision and the case should proceed to limited, focused discovery on the question of class certification.

Respectfully submitted,

Date:  August 1, 2018

/s/ *Matthew R. Wilson*
Matthew R. Wilson (0072925)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (0091162)
Email: mboyle@meyerwilson.com
MEYER WILSON CO., LPA
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 819-8230

*Attorneys for Plaintiff and the Proposed Classes*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed via the Court's ECF system and was thereby served on counsel for Defendant Capital Alliance Group.

By: /s/ *Matthew R. Wilson*
Matthew R. Wilson

*One of the Attorneys for Plaintiff*